IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIRCUIT CIVIL

CATARINO BALTAZAR,

    Plaintiff,

v.                                CASE NO.: 10-16409.CI N

                                      DIVISION:

BALBOA INSURANCE COMPANY,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, CATARINO BALTAZAR, (hereinafter referred to as "Plaintiff"), by and through undersigned counsel, files this Complaint against the Defendant, BALBOA INSURANCE COMPANY, (hereinafter referred to as "Defendant"), and as grounds therefore states as follows:

1. The amount in controversy in this action exceeds the sum of Fifteen Thousand and 00/100 Dollars ($15,000.00), exclusive of pre-judgment interest, court costs, and attorneys' fees.

2. At all times relevant hereto, Plaintiff, was and is a resident of Pinellas County, Florida, and owned the real property located at 20 North Aurora Avenue, Clearwater, Pinellas County, Florida, 33765, (hereinafter referred to as "The Insured Property").

3. At all times relevant hereto, the Defendant was and is an insurer in the State of Florida and which provided a policy of property insurance to Plaintiff. Further, such policy of insurance was issued for delivery and delivered, in Pinellas County, Florida and insured a Pinellas County risk.

4. In consideration of the premium paid to it by Plaintiff, Defendant issued to Plaintiff in Pinellas County, Florida, a Homeowners policy of insurance, Policy No. 4800-0100 (hereinafter referred to as "The Policy"), which was in full force and effect at the time loss and damage occurred as a result of sinkhole activity to the Insured Property. Plaintiff has requested a certified copy of The Policy from Defendant. Plaintiff believes Defendant to be in possession of The Policy.

5. On or about January 16, 2010, The Insured Property suffered damages as a result of sinkhole activity.

6. The Policy extends coverage for damage to The Insured Property, as well as other coverages, if The Insured Property is damaged by an insured peril such as a sinkhole and/or sinkhole activity.

## **BREACH OF CONTRACT**

7. Plaintiff realleges and incorporates paragraphs 1 through 6 as if fully set forth herein.

8. This is an action for damages for breach of an insurance contract against Defendant.

9. On or about January 16, 2010, The Insured Property was damaged by sinkhole activity, and Plaintiff suffered a substantial loss regarding the real property and continues to suffer such loss.

10. Plaintiff notified Defendant of the loss and damage to The Insured Property.

11. Thereafter, unilaterally and without consultation with Plaintiff, Defendant retained the services of EFI Global Engineering, (hereinafter referred to as "EFI") to

perform a subsidence investigation to determine the cause of the damage to The Insured Property.

12. EFI prepared a written report of its findings and conclusions of its subsidence evaluation of The Insured Property dated July 2, 2010. A copy of this correspondence is attached hereto as **Exhibit A**.

13. By correspondence dated August 4, 2010, presumably based on EFI's report, Defendant denied Plaintiffs' insurance claim for damages to The Insured Property as a result of sinkhole activity. A copy of this correspondence is attached hereto as **Exhibit B**.

14. Given concerns with the propriety of EFI's testing and report, adopted by Defendant, Plaintiff retained the services of their own engineering firm to conduct a review of EFI's subsurface investigation.

15. Upon information and belief, the geotechnical engineering firm retained by Defendant, EFI, failed to comply with standard geotechnical engineering practices and procedures in completing its inspection, testing, and evaluation of the damage to The Insured Property.

16. Upon information and belief, The Insured Property suffered direct physical damage due to sudden settlement or collapse of the earth supporting such property as a result of subterranean voids created by the action of water on a limestone or similar rock formation.

17. As of August 4, 2010, Defendant knew, or should have known, that Plaintiff had outstanding coverage damages that were directly caused by sinkhole activity, and that insurance monies were due and owing.

18. Plaintiff is entitled to full cost of repairs of the damage to The Insured Property, including, but not limited to, remediation of subsurface conditions, restoration of the foundation, cosmetic repair, repair of the cracks, structural repair, temporary repairs and other expenses necessary to repair The Insured Property, and if The Insured Property is not repairable within the applicable coverage limits, an amount equal to such limits for the total loss.

19. By electing to cover sinkhole loss as set forth in the insurance policy, Defendant contractually obligated itself to investigate and resolve sinkhole claims in a manner that is not inconsistent with the provisions of Fla. Stat. § 627.707, but which may provide benefits broader than those provided under Fla. Stat. § 627.707, and consistent with Fla. Stat. § 627.7011(3).

20. Defendant breached its contract with Plaintiff by failing to ensure an adequate subsidence investigation, failing to pay in full, Plaintiff's contractual and compensatory damages under the contract, and failing to work in consultation with Plaintiff with respect to the investigation and repair of the property.

21. Plaintiff, as a result of sinkhole activity underneath The Insured Property, have suffered damage to The Insured Property, and as a direct result of Defendant's breach of its insurance contract; Plaintiff has lost the full value and full benefit of The Insured Property and continues to suffer such loss.

22. As a direct result of Defendant's breach of its insurance contract, it has been necessary for Plaintiff to incur and become obligated for attorneys' fees and costs in the prosecution of this action. Florida Statute § 627.428, provides for the recovery of such attorneys' fees in the event of such need.

**WHEREFORE,** the Plaintiff, CATARINO BALTAZAR, prays this Court determine that Defendant, BALBOA INSURANCE COMPANY, has breached its insurance contract, to enter an Order directing Defendant, BALBOA INSURANCE COMPANY, to provide coverage and to pay, in full, their contractual and compensatory damages under the contract, to award pre-judgment interest on the amounts wrongfully withheld, to award the costs of this action, to award attorneys' fees pursuant to Florida Statute § 627.428, and to grant such other and further relief as this Court may deem just and proper.

**FURTHER,** the Plaintiff, CATARINO BALTAZAR, requests a trial by jury on all issues so triable.

**THE THOMPSON TRIAL GROUP, P.A.**
Attorneys for Plaintiff
403 N. Howard Ave.
Tampa, FL 33606
Telephone: 813.254.1800
Facsimile: 813.254.1844
tthompson@ttglaw.com

By: _____
THOMAS W. THOMPSON, ESQ.
FBN: 0163376

ii

| | |
|---|---|
| EFI File No.: 94204-05664 | July 2, 2010 |
| Insured: Catarino Baltazar | |

Subject:  **Report of Subsurface Exploration and Distress Evaluation**
The Baltazar Residence
20 North Aurora Avenue
Clearwater, Florida 33765
Claim No. L10015140
EFI Project No. 94204-05664

<u>Legal Description</u>
SKY CREST UNIT NO. 7
BLK J, LOT 7

<u>Parcel No.</u>
13-29-15-82494-010-0070

Dear Mr. Meyer:

As authorized, EFI Global Inc., (EFI) has completed a study to determine, in our opinion, if a cause(s) of the distress to the structure could be identified within the depths and areas explored for this study in accordance with the requirements outlined in Florida Statute Title XXXVII, Chapter 627.707 (2).

## SINKHOLE ACTIVITY OPINION

Based on our evaluation of the information gathered during this study, **it is EFI's opinion that sinkhole activity is not a cause of the damage that has developed in this structure, within a reasonable professional probability.** Furthermore, the analyses and tests performed were of sufficient scope to eliminate sinkhole activity as a cause of the damage, within a reasonable professional probability. This report is certified in general accordance with Florida Statute 627.7073; no warranties are expressed or implied.

This report and the accompanying appendices present detailed information in support of our opinion, including a description of the methods used to perform this study, a compilation of the data that was gathered, a presentation of our evaluations and opinions that identify the cause(s) of the reported distress, presentation of methods recommended to mitigate problematic subsurface conditions (where these exist), and presentation of methods recommended to restore the damaged structure(s).

EXHIBIT
1



August 4, 2010

BAC Home Loans Servicing, LP
P.O. Box 961206
Fort Worth, TX 76161

RE: Borrower: Catarino Baltazar
Insured Lender: BAC Home Loans Servicing, LP
Certificate No.: CW8234880
Claim No.: L10015140
Loss Type: Other Physical Damage
Loss Cause: Sinkhole Activity
Date of Loss: 01/16/2010
Claim Reported Date: 04/07/2010
Loan No.: 035702990
Loss Location: 20 N Aurora Avenue
Clearwater, FL 33765

Dear BAC Home Loans Servicing, LP:

We are writing on behalf of Balboa Insurance Company, to set forth Balboa Insurance Company's position with regard to the claim for the above-referenced property. We have completed our investigation into the above-captioned claim filed for other physical damage. Based on our investigation of the claim, and after having reviewed all the information available to us thus far, Balboa Insurance Company has determined that the policy does not provide coverage for your claim. Following is a further explanation of our conclusion.

We understand the facts to be as follows. The subject property is a single family dwelling located at 20 N Aurora Avenue, Clearwater, FL 33765. The property was inspected on April 27, 2010 by Andrew Sway of EFI Global Engineering. This inspection revealed hairline and stair step cracks to the exterior stucco and cracks in the front concrete driveway. We have included a copy of this report for your review.

It is EFI's opinion that sinkhole activity is not a cause of the damage that has developed in this structure. Further, EFI determined the stucco and concrete slab cracks to be neither symptomatic of significant distress nor structurally significant. EFI identified several possible causes for this damage including; plastic shrinkage of concrete slabs, the absence of control joints in concrete slabs, minor differential settlement, insufficient compaction of the soils prior to pouring of the foundation, post compaction of the soils underlying the foundation and slab floors, long term creep compression of the loose sand deposits beneath the foundation, buried organic soils, problematic shallow soil conditions, and strain of building materials due to humidity and/or temperature induced expansion and contraction cycles.

**PERTINENT POLICY PROVISIONS**
Balboa Insurance Company issued Risk Based Protection Policy number CW8234880 to BAC Home

PO Box 19702, Irvine, CA 92623-9702 • www.balboainsurance.com
Balboa Life Insurance Company • Balboa Insurance Company • Meritplan Insurance Company • Newport Ins
Balboa Life Insurance Company of New York • Balboa Lloyds Insurance Company

EXHIBIT B

Loans Servicing, LP, a subsidiary of Bank of America, N.A. (BAC Home Loans), effective for the policy period of 08/04/2009 to 08/04/2010 ("the Policy"). The Policy contains the following relevant provisions, found on Residential Property Fire Insurance Form Number 4800-0100:

### INSURING AGREEMENT

In consideration of the premium paid, and subject to the limits of liability, exclusions, conditions and other terms contained in the Lender's General Form and this Residential Property Fire Insurance Form ("Residential Property Form"), WE agree to indemnify YOU for a covered LOSS, to the extent of YOUR insurable interest in such LOSS.

### DEFINITIONS

Whenever used in this Residential Property. Form, the following words shall have the meanings as shown herein:

"YOU," "YOUR," and "YOURS" mean the NAMED INSURED shown under Item 1 on the DECLARATIONS PAGE of the Policy, under which the insurance on the DESCRIBED LOCATION has been issued, which has an interest in the RESIDENTIAL PROPERTY described in the NOTICE OF INSURANCE as the direct result of a first mortgage, second mortgage, other lien instrument, or an agreement for the servicing of such contracts.

"WE," "US," "OUR," and "OURS" mean the Company that underwrites this insurance.

...

"BORROWER" means the person(s) or entity identified as the BORROWER on the NOTICE OF INSURANCE.

"DATE OF LOSS" means the date on which the LOSS occurred.

"DECLARATIONS PAGE" means the DECLARATIONS PAGE of the Policy, which identifies the Named Insured and the Policy Period applying to the Policy.

"DESCRIBED LOCATION" means the location identified as the DESCRIBED LOCATION on the NOTICE OF INSURANCE.

"NOTICE OF INSURANCE" refers to the form issued as notice of insurance purchased by YOU. A NOTICE OF INSURANCE form specifies the location, amount, and term of insurance for the individual RESIDENTIAL PROPERTY that has been insured by US at YOUR request.

...

"LOSS" means direct, sudden and accidental physical damage to the RESIDENTIAL PROPERTY or OTHER STRUCTURES, caused by an insured peril, or the theft of all or part of the covered RESIDENTIAL PROPERTY or OTHER STRUCTURES.

"OTHER STRUCTURES" means structures on the DESCRIBED LOCATION, which are separated from the dwelling structure by clear space or connected to the dwelling structure by only a fence, utility line or similar connection. OTHER STRUCTURES do not include structures that are used or partially used for commercial, farming, or manufacturing purposes, or are rented or held for rental to any person not a tenant of the dwelling structure, unless used solely as a private garage. Land, including the land on which OTHER STRUCTURES are located, is not covered property.

"POLICY" means the Policy as defined on the DECLARATIONS PAGE (ref erred to herein as "the Policy").

"RESIDENTIAL PROPERTY" means the one to four-unit dwelling structure identified as the DESCRIBED LOCATION, which is designed, intended, and used principally for

dwelling purposes, and structures attached to the dwelling structure. Land, including the land on which the RESIDENTIAL PROPERTY is located, is not covered property.

. . .

## OTHER COVERAGES

. . .

### INSURED PERILS AND GENERAL EXCLUSIONS

WE insure YOU for LOSS. However, WE do not insure YOU for loss or damage caused directly or indirectly by, consisting of, or resulting from, any of the following perils. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage:

1. Wear and tear, marring, deterioration, inherent vice, latent defect, freezing, rust, corrosion, neglect before or after a loss, mechanical or structural breakdown or failure, abusive use, or defective, faulty, or inadequate maintenance, design, construction, remodeling, planning, zoning, surveying or siting of the RESIDENTIAL PROPERTY or OTHER STRUCTURES. (Incomplete remodeling is considered defective, faulty or inadequate remodeling.) If any of these causes an ensuing LOSS in the form of a sudden and accidental escape of water from a plumbing, heating or air conditioning system or household appliance, WE cover LOSS caused by the water. WE also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance from which this water escaped. WE do not cover loss to the system or appliance from which this water escaped;

. . .

6. Water below the surface of the ground or loss or damage from the pressure exerted by such water, including its flow, seepage or leakage through foundations, walls, floors, basements, doors, windows, sidewalks, driveways, or any other opening;

7. Earth movement caused by, resulting from, contributed to or aggravated by earthquake; landslide; the elevation, sinking, or shifting of land or soil, except a VOLCANIC EVENT, unless direct damage by a fire or explosion ensues, in which case WE will pay only for the ensuing fire or explosion LOSS;

. . .

10. Collapse, settling, shrinking, cracking, expansion or bulging of pavements, foundations, floors, walls, ceilings, patios, walkways or driveways, except as provided for under the "Other Coverages" portion of the Residential Property Form;

. . .

18. Acts or decisions of any person, group, governmental body or organization, including the failure to act or decide;

. . .

20. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of any building or structure, except as provided for under the Residential Property Form.

Under paragraphs 1, 10, 11, 12, 13, 14, 15, and 16, any ensuing LOSS caused by any of these, if not otherwise excluded in the Residential Property Form, is covered.

## CONDITIONS

The following conditions apply to this Residential Property Form:

...

11. Suit against US. No action may be brought unless there has been compliance with the provisions of the Residential Property Form and the Lender's General Form, and the action is started within one year after the DATE OF LOSS.

...

18. Changes of Provisions. No change may be made to any provision of the Residential Property Form except by written endorsement issued by US. No other written changes or oral changes will be valid.

The Florida Amendatory Endorsement, form number 01A09-09ED0106-E1204, changes some of the policy provisions. The following relevant provisions are changed as follows:

## IV. EXCLUSIONS

...

Form 01A09-MFPL0001-E0504, EXCLUSIONS, paragraph 11 "Earth movement" is deleted in its entirety and replaced by the following:

10. Earth movement: WE will not pay for damage caused by, resulting from, contributed to or aggravated by earth movement including, but not limited to, earthquake; landslide, mudslide, mudflow, or shifting of land or soil unless direct damage by fire or explosion ensues, in which case WE will pay only for the ensuing fire explosion LOSS;

    WE will pay for losses incurred by SINKHOLE COLLAPSE: meaning actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

...

## V. CONDITIONS

...

Form 01A09-MFPL0003-E0504, CONDITIONS, paragraph 11, "Suit against US," is hereby deleted in its entirety and replaced by the following:

11. Suit against US. No action may be brought unless there has been compliance with the provisions of the Residential Property Form and the Lender's General Form, and the action is started within five (5) years after the DATE OF LOSS.

After reviewing photos and evidence provided to us by the independent adjuster and EFI Global Engineering, the damages to the property are consistent with plastic shrinkage of the concrete slab, minor differential settlement, thermal strain, and normal deterioration of building materials. As stated in the above quoted policy language, we do not provide coverage for defective, faulty, or inadequate design, construction, planning, zoning, surveying or siting. As stated in the above quoted policy language, we do not provide coverage for earth movement caused by, resulting from, contributed to or aggravated by the elevation, sinking, or shifting of land or soil. As stated in the above quoted policy language, we do not provide coverage for settling, shrinking, cracking, expansion or bulging of pavements, foundations, floors, walls, ceilings, patios, walkways or driveways. Accordingly, and for the reasons discussed above, we must respectfully deny your claim.

Balboa Insurance Company's decision to deny coverage for your claim is based upon its review of the facts surrounding the loss as those facts are known to Balboa Insurance Company. If you have any information

regarding the damage to your home that has not been provided to Balboa Insurance Company, and which could have a bearing on its decision, we invite you to submit that information for our review and consideration.

Please understand that this letter is not intended to waive any of the rights or defenses of Balboa Insurance Company, which it may now have or which may hereafter accrue to it by reason of the terms and conditions of the Policy of insurance issued by Balboa Insurance Company, or otherwise, and that all of said rights and defenses are specifically reserved to Balboa Insurance Company.

At your request, a copy of this letter will be sent to the borrower.

Please be aware that under the terms of the Policy, there is a suit limitation provision that requires an insured to file any suit or action with regard to a claim within five years after the above referenced date of loss.

Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

Sincerely,

*Jason Meyer*

Jason Meyer
Claims Rep II
Balboa Insurance Company
Phone: 1.602.464.0526
Fax#: 1.866.336.9054

Encl.: Damage Report

CC: Thompson Trial Group (Atty)
    Catarino Baltazar